## Fred Brandt, Appellee, v. Joliet & Eastern Traction Company, Appellant.

## Gen. No. 6,600.

1. RAILROADS, § 284*—*what is effect of change of control on requirement as to time for maintenance of cattle guards.* Under section 62, ch. 114, Rev. St. (J. & A. ¶ 8811), requiring railroad corporations to maintain cattle guards within 6 months after a line is open for use, it is immaterial how often the railroad has changed hands; the 6-month period dates from the time of first operation.

2. RAILROADS, § 306*—*when refusal of instruction in action for value of cattle killed through lack of cattle guards not prejudicial error.* In an action for the value of cattle killed through lack of cattle guards, brought under section 62, ch. 114, Rev. St. (J. & A. ¶ 8811), it is not prejudicial error to instruct that the defendant is liable upon proof of certain facts, without requiring proof that the railroad has been in operation for 6 months, where there is no evidence contradicting positive evidence that it has been so operated.

3. RAILROADS, § 306*—*when instruction on measure of damages for loss of cattle due to absence of cattle guards not erroneous.* In an action for wrongful death and injury of cattle through failure to provide cattle guards, brought under section 62, ch. 114, Rev. St. (J. & A. ¶ 8811), it is not error to instruct that the measure of damages is the fair cash value of the cattle before the accident, where the railroad company took possession of all the injured and killed cattle except one slightly injured animal, and the verdict shows that the jury could not have allowed more than the evidence warranted for the injury to this animal.

4. RAILROADS, § 297*—*what is purpose of statute requiring cattle guards.* Section 62, ch. 114, Rev. St. (J. & A. ¶ 8811), in requiring cattle guards on railroads, is intended to protect owners of stock running at large, and it is immaterial how the stock came to be on the highway.

5. TRIAL, § 241*—*non-necessity that verdict find amount of damages and attorney's fees separately.* In an action for wrongful death of cattle through failure to provide cattle guards, it is not necessary that the verdict find the amount of damages and attorney's fees separately.

Appeal from the Circuit Court of Will county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the October

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

term, 1918. Affirmed. Opinion filed February 8, 1919. Rehearing denied and opinion modified April 8, 1919.

Garnsey, Wood & Lennon, for appellant.

Albert H. Krusemark, for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

The Joliet & Eastern Traction Company operates an interurban line between Joliet and Chicago Heights and runs substantially east and west. Frankfort in Will county and Matteson in Cook county are intermediate stations about 7 miles apart, and it has a private right of way between those stations. A north and south highway is on the line between said two counties about 3 miles east of Frankfort. On October 11, 1916, there were no cattle guards nor wing fences on the east side of the county line road where said railroad crossed the county line road and went into its own private right of way, nor were there any such wing fences or cattle guards at the next crossing east thereof. At nightfall that evening Fred Brandt had a bunch of cattle in a field of his own some distance north of said crossing and on the west side of the county line road. They escaped therefrom and went onto the right of way of the company east of said highway, and were grazing by the side of the track some 1,000 or 1,400 feet east of the county line road. About 11:30 p. m. a passenger car on said road approached from the east. The cattle evidently saw and heard it and rushed upon the track and started to run west in front of the car. Seven of them were struck. Part of them were killed and the rest were injured. The men in charge of the car ran it back to the next highway east where the company had a telephone. The conductor communicated with the train dispatcher and then came on west to Frankfort. A section foreman and men under him

then went east with a car, part of which was a flat car, and killed two of the injured cattle and loaded two on the flat car and took them to Frankfort. Brandt had reached the scene of the accident before this flat car got there. One heifer was injured very slightly. He drove that one home and kept it. The next morning the section foreman and men under him came in the flat car and took away the rest of the dead and injured cattle. They were turned over by the section men to Folkers, a butcher at Frankfort, and he took off the hides from all the cattle and the company carried them to Joliet. Folkers loaded the carcasses upon a car of the company under the direction of the company and the company hauled them to Joliet. Brandt never had anything to do with these six animals after the accident nor did he receive any avails therefrom.

Brandt brought this action against the traction company under section 62 of chapter 114 of the Revised Statutes (J. & A. ¶ 8811), because of the absence of wing fences and cattle guards. Demurrers were sustained to the original declaration and additional counts, and an amended declaration was filed, to which defendant filed various pleas, to which there were demurrers and replications. The assignment of errors here does not question any ruling on the pleadings. There was a jury trial and plaintiff had a verdict and a judgment for $594.99, from which defendant appeals.

The statute requires that every railroad corporation shall, within 6 months after any part of its line is open for use, do certain things, among which is to maintain fences and cattle guards at highway crossing sufficient to prevent cattle from getting onto such roads. Appellant contends that appellee did not prove that appellant had operated the road 6 months before the accident. We have carefully examined the evidence on that subject in the record and are satisfied that it is thereby established, both by positive evidence and by indirect testimony, that this company had operated the road at that point for considerably more than a year.

Some of appellant's employees, who were witnesses, had not been at work for it that long and had not known the road that long, but that did not detract from the evidence of other witnesses on that subject. True, there are allusions to two companies and to a receivership, but that evidence does not show when those respective companies held the road or when the receiver held it, and does not contradict the testimony of the witness who testified that this company had operated the road almost a year and a half to his knowledge. Moreover, we understand this statute to require the erection of fences and cattle guards at highway crossings within six months after any part of the line is open for use, and if a railroad company acquires the ownership of a road already in existence and in operation and which has no fences or cattle guards, we do not understand that it is entitled to 6 months after its acquirement of the old road within which to erect such fences and cattle guards. The statute does not mean that if a railroad changes ownership every 5 months its owners will never be required to establish fences and cattle guards. *Toledo, P. & W. Ry. Co. v. Arnold,* 51 Ill. 241.

In that connection appellant contends that it was error to give the sixth instruction for appellee, which first stated the duty of appellant under the statute to erect such cattle guards within 6 months after the road has been opened and operated, and then told the jury that if they found certain things from the evidence appellant would be liable in this case, and did not leave the jury to determine whether the road had been open and in operation 6 months. The omission left the instruction insufficient, and if there had been any conflict in the evidence on that subject the omission would have been erroneous. But there is positive evidence that appellant had operated this road more than one year, and circumstantial evidence to the same effect, and no evidence to the contrary, and under this

condition of the evidence it was not error to treat that fact as proved.

Said sixth instruction also told the jury that, in the case stated, appellant would be liable for the fair cash market value of such cattle at the time and place they were killed or injured. Appellant contends that the instruction should have stated that damages were recoverable at the difference between the fair cash market value of such cattle just before they were killed or injured and the same value immediately after the injury, and that it was the duty of the appellee to take reasonable measures to diminish the loss, and that he did not show that he did this. We are of the opinion that, as the agents of the company took charge of the six cattle and removed them and killed part of them and appropriated the proceeds, the instruction as given was proper as applied to the six cattle. One heifer had only a broken tail and appellee has that animal. He testified the damage to it was $25. He also testified that the value of that heifer before she was hurt was $60. Appellant contends that this instruction authorized the jury to allow appellee $60 for this animal, although he has the animal and only claimed a damage of $25 to it. The instruction could be so understood. Except appellee, no witness testified to the value of that heifer. Witnesses on both sides testified as to the value of all the other animals killed or injured. The verdict was for $504.99. The undisputed evidence as to the attorney's fees fixed them at $125. As that amount was not disputed, the verdict of the jury as to the cattle was $379.99. If to the lowest estimate made by any witness as to the value of the other six cattle were to be added $60 for this broken tail, the verdict would necessarily have been higher than the jury rendered. It is therefore plain that the jury did not allow $60 for the breaking of the heifer's tail. Notwithstanding the language of the instruction it is not reasonable to suppose that the

jury would allow appellee $60 for the injury to that heifer when the only witness on that matter testified the injury was only $25. Appellee introduced testimony of several witnesses, farmers and stock buyers, as to the value of the six cattle just before the injury, and the jury did not allow as much as this evidence would have justified. We conclude the jury either allowed nothing for the broken tail or not to exceed $25 therefor.

Appellant contends that appellee should have confined his cattle upon his own premises, and that the condition of his fences, and whether his cattle got into the highway by his neglect or because they were unruly was a material inquiry, which it should have been permitted to pursue. We are of opinion that the statute was intended to require cattle guards and fences to prevent cattle at large in the highway from getting upon the right of way, regardless of the question how said cattle came to be in the highway. *Illinois Cent. R. Co. v. Davidson,* 225 Ill. 618.

Appellant contends that the verdict should have found the amount of the damages and the amount of the attorney's fees separately. It did not ask any instruction to that effect, and its contention seems to be answered by *Peoria, D. & E. Ry. Co. v. Duggan,* 109 Ill. 537. The authorities are clear that the attorney's fees may be recovered in the action for damages. We are of opinion both may be united in a lump sum in the verdict as properly as the damages to each of the six cattle, or as the amount due on a note and the amount due for a bill of goods in an action of assumpsit. The judgment is therefore affirmed.

*Affirmed.*